# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA M. LUPYAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:09cv1403 |
| | ) | **Electronic Filing** |
| **CORINTHIAN COLLEGES INC.**, | ) | |
| successor in interest to MJB Acquisition | ) | |
| Corp., t/d/b/a WYOTECH, | ) | |
| **JAMES THOMAS, ARTHUR** | ) | |
| **HERMAN** and **MARK REYNOLDS**, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

September 8, 2011

## I.    INTRODUCTION

Plaintiff, Lisa M. Lupyan ("Lupyan" or "Plaintiff"), initiated this action by filing a

Complaint against Defendants, Corinthian Colleges, Inc. ("CCI"), James Thomas ("Thomas"),

Arthur Herman ("Herman"),and Mark Reynolds ("Reynolds")(collectively "Defendants")

alleging violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.* ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. § 261("FMLA"), the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), the Age Discrimination

in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human

Relations Act, 43 PA. STAT. § 951 *et seq.* ("PHRA").  Lupyan has filed a Motion for Summary

Judgment and a Concise Statement of Material Facts.  Defendants have responded to the motion,

but aside from an objection to Paragraph No. 81 of Lupyan's Concise Statement referenced in

their brief in opposition, Defendants failed to file a responsive concise statement of material facts as required under LR[1] 56.1(C)(1). Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56.1(E). Defendants have also filed a motion for summary judgment to which Lupyan has responded, and the matters are now before the Court.

## II. STATEMENT OF THE CASE

CCI is a post-secondary, for-profit school offering programs in Automotive Technology, Diesel Technology, Applied Service Management and Collision/Refinishing. Complaint ¶¶ 3 & 16. Lupyan was hired by CCI's predecessor, Wyotech, on June 23, 2004, as an instructor in the Applied Service Management program. Complaint ¶¶ 15 & 17.

In early December, 2007, Thomas testified that Lupyan appeared depressed and informed her that a leave of absence was an option for her. Plaintiff's Concise Statement of Material Facts ("Pl. CSMF") ¶¶ 38 & 41. Lupyan was concerned about her job, but she agreed that it would be to her advantage to take a leave of absence. Pl. CSMF ¶¶ 19, 21 & 43. Thomas called Sherri Hixson ("Hixson"), Supervisor of Administration, and asked what paperwork Lupyan needed to go on a leave of absence. Pl. CSMF ¶¶ 68 & 75. Hixson sent the forms to Thomas, and printed a set for Lupyan. Pl. CSMF ¶ 76. Hixson testified that she made no recommendation about what type of leave Lupyan would need, because the forms were processed by CCI's HR Department

---

[1] "LR" refers to the Local Rules of the United States District Court for the Western District of Pennsylvania.

("HR") in California, and HR made the determination of the type of leave that was appropriate. Pl. CSMF ¶ 78; Defendant's Exhibit ("Def. Ex.") A, Hixson Aff.¶¶ 6 & 8.

CCI's Request for Leave form was completed by Lupyan and signed on December 3, 2007. Hixson Aff.¶ 4; Def. Ex. C. On the original form, Lupyan requested "Personal Leave" from December 4, 2007 through December 31, 2007. Hixson Aff.¶ 4; Def. Ex. C. Lupyan selected Personal Leave by placing an "x" in box No. 4 of the form. Pl. CSMF ¶ 80; Def. Ex. C. On or about December 17, 2007, Lupyan produced a Certification of Health Provider, a standard United States Department of Labor form for providing certification of medical condition. Hixson Aff.¶ 7; Def. Ex. D.  Lupyan's Request for Leave form and Certification of Health Provider were forwarded to CCI's HR Department. Hixson Aff.¶ 8. Based on these documents, HR determined that Lupyan was eligible for FMLA leave. *Id.*; Hixson Depo. pp. 16-17. Hixson received an e-mail from Anne Binns, CCI's Human Resource Coordinator located in California, regarding Lupyan's Request for Leave form which stated: "please white out the 'Personal Leave.' This will fall under FMLA." *Id.*

Hixson met with Lupyan on December 18, 2007, to correct the paperwork necessary for Lupyan's leave. Hixson Aff.¶ 9. Hixson testified that she whited out box No. 4, and Lupyan placed an "x" in box No. 1 for FMLA leave and initialed it to show the change. Hixson Depo. p. 17; Hixson Aff.¶ 9. Hixson changed the date of return from 12/31/07 to 4/01/08, based upon the doctor's statement in the Certification of Health Provider provided by Lupyan during the meeting. Pl. CSMF ¶¶ 83 & 84; Hixson Aff.¶ 9. CCI mailed a letter dated December 18, 2007, to Lupyan advising her that her leave was deemed FMLA leave, and further explained her rights under the FMLA. Hixson Aff.¶ 11;  Def. Exhibit F.

Lupyan was released by her doctor to return to work on March 13, 2008. Complaint ¶¶ 34 & 35; Pl. CSMF ¶ 1. Specifically, the release stated in relevant part: "I feel that [Lisa] is able to return to work. She would benefit from a position with minimal student contact if at all possible. This type of position would help decrease her anxiety symptoms." *See* Plaintiff's Appendix Ex. 6. Lupyan advised Thomas that she was released to return to work and offered to provide CCI with a copy of the release. Complaint ¶¶ 35. Thomas indicated that he did not want a copy of the release, and advised Lupyan that he had to first discuss the matter with Mark Reynolds ("Reynolds"), CCI's Direct of Education. Pl. CSMF ¶ 3. On March 26, 2008, Thomas advised Lupyan that he had spoken with Reynolds and it was decided that Lupyan was to return to work as an Instructor III with limited teaching responsibilities. Pl. CSMF ¶¶ 5 & 6. On April 1, 2008, Thomas advised Lupyan that she could not return with restrictions. Pl. CSMF ¶¶ 7, 8 & 9.

On April 3, 2008, Reynolds advised Lupyan that if she could get a release from her psychiatrist stating that she had no work restrictions, CCI could lay her off. Complaint ¶ 41. Lupyan then called Reynolds, and a meeting was scheduled for April 9, 2008. Pl. CSMF ¶¶ 12 & 13. On April 9, 2008, Lupyan then met with Reynolds and Arthur Herman ("Herman"), Vice President and Senior Administrator. Pl. CSMF ¶ 14. Lupyan brought a release from her psychiatrist to the meeting indicating she was released to return to work with no restriction. Pl. CSMF ¶ 31. During the meeting, Lupyan was advised that she was terminated from her position because of low student numbers. Pl. CSMF ¶ 15. Reynolds advised Lupyan that she was also being terminated because she had not been released to return to work within twelve (12) weeks of taking FMLA leave. Complaint ¶ 50. Lupyan insisted that she was not on FMLA leave, but

that she was on short term disability.  Complaint ¶ 51. Reynolds replied that CCI only

recognized FMLA leave[2]. Complaint ¶ 52.

In her motion for summary judgment, Lupyan contends that (1) Defendants interfered,

restrained or denied her exercise, or attempt to exercise, her rights under the FMLA; (2)

Defendants retaliated against her for taking FMLA leave; and (3) she is entitled to an award of

liquidated damages.  Defendants contend they are entitled to summary judgment as to all of

Lupyan's claims.

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no

genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of

law. To support denial of summary judgment, an issue of fact in dispute must be both genuine

and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the

non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty

Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court

is not permitted to weigh the evidence or to make credibility determinations, but is limited to

deciding whether there are any disputed issues and, if there are, whether they are both genuine

and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the

party opposing summary judgment and all reasonable inferences from the facts must be drawn in

favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177,

180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

---

[2]     Hixson testified, however, that CCI listed three (3) types of leave in the Employee
Handbook: FMLA leave; personal leave; and general leave.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV.   DISCUSSION

The FMLA was enacted to allow "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). The Act grants eligible employees the right to take up to twelve workweeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). At the end of the leave period, the employee has the right to be restored to her former position or an equivalent position. 29 U.S.C. § 2614(a)(1).

Three provisions collectively form the basis of liability under FMLA. Two subsections of 29 U.S.C. § 2615(a), entitled "Interference with [FMLA] rights," state:

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

Further, employers are prohibited from "discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c). Retaliation claims, such as the one set forth in this instance, arise under on § 825.220(c). *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).

A.    <u>Interference With Rights Under the FMLA</u>

Interference claims are based on the FMLA regulations which explain that an employer interferes with the employee's rights by refusing to authorize FMLA leave or discouraging an employee from using such leave. 29 C.F.R. § 825.220(b); *see also* 29 U.S.C. § 2615(a)(1). In order to assert a claim of interference, an employee must show that she was entitled to benefits under the FMLA and that her employer illegitimately prevented her from obtaining those benefits. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007); *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). A plaintiff need not, however, establish that she was treated differently than others and, unlike a case in which the plaintiff is pursuing a claim for discriminatory retaliation, the defendant cannot escape liability by providing a "legitimate business purpose" for the decision. *Callison v. City of Philadelphia*, 430 F.3d at 120 ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.")

In this instance, it is undisputed that Lupyan received all of the leave she was entitled to under the FMLA. Lupyan's FMLA leave began on or about December 4, 2007, and officially expired on February 26, 2008. Lupyan first informed CCI of her release to return to work on or about March 13, 2008, approximately fourteen (14) weeks after she initiated her leave in December. CCI construed the release as one with restrictions and advised Lupyan she could not return to work with restrictions. Lupyan provided a release to return to work without restrictions at a meeting with CCI on April 9, 2008, the day she was terminated. At the time of her termination, Lupyan had used approximately eighteen (18) weeks of leave. CCI contends that Lupyan's health benefits were continued during the twelve week FMLA period, see Hixson Aff. ¶ 16, but there is no evidence that Lupyan's health benefits were discontinued at the end of such twelve week period. Because CCI provided Lupyan with the leave she was entitled to under the FMLA, this Court cannot find that CCI interfered with her rights by refusing to authorize FMLA leave. *See e.g. Moticka v. Weck Closure Sys.*, 183 Fed. Appx. 343, 2006 U.S. App. LEXIS 13443 (4th Cir. May 31, 2006) (per curiam) (unpublished) (holding that the employer did not violate the employee's rights under the FMLA when it provided the plaintiff with thirty-four weeks of FMLA leave).

Lupyan argues, however, that CCI interfered with her rights under the FMLA by failing to provide her with the information necessary to make an informed decision about her leave, which resulted in the termination of her employment. Specifically, Lupyan contends that her rights under the FMLA were never discussed during her meeting with Hixson to change the Request for Leave Form, and she never received the December 18, 2007, letter CCI allegedly sent to inform her of her FMLA leave.

An employer's failure to advise an employee of her right to FMLA leave constitutes interference in violation of § 2615(a)(1). *See Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 144-145 (3d Cir. 2004). Advisement of FMLA rights is necessary "to ensure that employers allow their employees to make informed decisions about leave" and to allow employees to plan their medical absence in such a way as to ensure protection under the FMLA. *Id.* at 144 (citing *Nusbaum v. CB Richard Ellis, Inc.*, 171 F.Supp.2d 377, 379-80 (D.N.J. 2001)). A plaintiff asserting a failure to advise claim must also prove prejudice by showing that had she been properly informed of her FMLA rights, she could have structured her leave differently. *Id.* at 145-146; *see also Capilli v. Whitesell Constr. Co.*, 271 Fed. Appx. 261, 267 (3d Cir. 2008).

As an initial matter, CCI was not required to designate Lupyan's leave under the FMLA for it to count toward the twelve (12) weeks permitted under the statute. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-89 (2002)[3]. Nonetheless, the Court finds that CCI provided adequate notice that Lupyan's leave was to be FMLA leave and that Lupyan knew or should have known she was entitled to twelve (12) weeks.

When Lupyan began her employment with CCI in 2004, she was given an Employee Handbook. Lupyan contends that she never received the Handbook, however, a "Receipt of Employee Handbook" was signed by Lupyan on June 21, 2004. *See* Exhibit A, Def. Brief in Opposition to Summary Judgment. The Handbook expressly explains a CCI employee's rights

---

[3]  In *Ragsdale*, the Supreme Court struck down a regulation that imposed punishment for an employer's failure to provide timely notice of its designation of FMLA leave, but did not take into account whether the employee was restrained in his or her exercise of FMLA rights by such delay or would have acted differently had notice been given. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. at 90-91 (invalidating 29 C.F.R. § 825.700 (a)). The Court in *Ragsdale* stated that, "[b]y mandating these results absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme." *Id.* at 91.

with regard to FMLA leave.  *See* Exhibit D pp. 18-19, Def. Brief in Support of Summary Judgment.

After Lupyan's Request for Leave was forwarded to HR, it was determined by HR that she was entitled to FMLA leave and her form should be revised. Lupyan initially requested personal leave, which pursuant to the Employee Handbook, would have allowed her no more than thirty (30) days. *See* Exhibit D p. 21, Def. Brief in Support of Summary Judgment.  Hixson met with Lupyan on December 18, 2007, to inform her of her FMLA leave and revise her leave request.  At that time, Lupyan provided Hixson with a U. S. Department of Labor Certification of Health Care Provider form (Family and Medical Leave Act of 1983) dated December 17, 2007, certifying her medical condition as panic attacks and extreme anxiety.  At the meeting, Lupyan changed her Request for Leave form to indicate a request for "Family Medical Leave" instead of "Personal Leave," and initialed the change.

CCI also sent Lupyan a Notification Letter dated December 18, 2007, informing her that her leave was designated as FMLA leave and explaining her rights under the Act. Lupyan contends that she did not receive the letter and notes that there is no evidence she signed and returned the "Acknowledgement of Receipt of Leave of Absence Letter."  CCI argues that it is entitled to a presumption of receipt under the mailbox rule because the letter was correctly addressed to Lupyan.  Under federal common law, "the 'mailbox rule' . . . provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee  in the usual time." *See Kimmel v. Cavalry Portfolio Servs., LLC*, 2011 U.S. Dist. LEXIS 83008, 11-12 (E.D. Pa. July 27, 2011) (citation omitted).   Proof that Lupyan received the letter "may be accomplished by presenting circumstantial evidence,

including evidence of customary mailing practices used in [CCI's] business." *See Robertson v. J.C. Penney Co., Inc.*, 484 F. Supp. 2d 561, 565 (S.D. Miss. 2007).

Here, CCI has submitted insufficient evidence to create a presumption that the Notification Letter was sent to Lupyan. Hixson's affidavit merely states: "[o]n December 18, 2007, CCI mailed a letter to Ms. Lupyan . . ." It is not necessary that Hixson have personal knowledge of the letter's mailing, but "at a minimum the affiant must have personal knowledge of the procedures in place at the time of mailing." *Kimmel v. Cavalry Portfolio Servs., LLC*, 2011 U.S. Dist. LEXIS 83008 at 12; *see also Burton v. Banta Global Turnkey Ltd.*, 170 Fed. Appx. 918, 924 (5th Cir. 2006). There is no evidence in the record that Hixson had such knowledge, nor is there any testimony or affidavits from any CCI employee regarding how and when the Notification Letter was submitted for mailing. Without adequate evidence concerning CCI's customary mailing practices, the Court finds that CCI is not entitled to a presumption that Lupyan received the letter.

Notwithstanding the failure of this presumption, the Court finds more than adequate evidence that Lupyan had notice that she was on FMLA leave. Because the Court concludes that CCI fulfilled its notice duties, there is no need to address the prejudice issue. Summary judgment will be entered in favor of Defendants and against Lupyan on her FMLA interference claim.

B.     Retaliation Under the FMLA

The FMLA also makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). This provision prohibits retaliation by an employer for the employee's exercise of rights under the FMLA. As with other retaliation claims, the Court must utilize the

burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Sherrod v. Philadelphia Gas Works*, 209 F. Supp. 2d 443, 451 (E.D. Pa. 2002). To state a *prima facie* case for retaliation, a plaintiff must allege that (1) she invoked her right to FMLA benefits; (2) she suffered a "materially adverse" employment action; and (3) the adverse employment decision was causally related[4] to the invocation of her rights. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)); *Hare v. Potter*, 220 Fed. Appx. 120, 127-128 (3d Cir. 2007).

The evidence of record clearly indicates that Lupyan's FMLA leave expired on or about February 26, 2008. In the best case scenario for Lupyan, she was initially cleared to return to work, arguably with restrictions, on March 13, 2008. The FMLA does not preclude the termination of employees after the expiration of FMLA leave and, unlike the ADA, the FMLA does not require an employer to reasonably accommodate an employee's disability. *Fogleman v. Greater Hazleton Health Alliance*, 122 Fed. Appx. 581, 587 (3d Cir. 2004) ("The FMLA does not require that the employer provide accommodation to an employee to facilitate her return. Rather, the employee must be able to perform the essential functions of the job without accommodation."); *Katekovich v. Team Rent A Car of Pittsburgh, Inc.*, 36 Fed. Appx. 688, 690 (3d Cir. 2002) ("An employer may not terminate an employee because he or she has taken the [FMLA] leave permitted by statute. If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee."); *Alifano v. Merck & Co., Inc.,* 175 F. Supp. 2d 792, 795 (E.D.Pa. 2001) ("Unlike the Americans with Disabilities Act . . . the FMLA

---

[4]     Except in circumstances where the timing of the alleged retaliatory act is "unusually suggestive," timing alone is not sufficient to demonstrate a causal link between the termination decision and an exercise of FMLA rights. *Schofield v. Metropolitan Life Ins. Co.*, 252 Fed. Appx. 500, 504 (3d Cir. 2007).

does not require an employer to reasonably accommodate an employee's serious health condition . . .").  Because CCI was permitted under the FMLA to terminate her after her failure to return to work after the expiration of her FLMA, Lupyan's retaliation claim fails as well.

Even assuming that Lupyan is able to establish a *prima facie* case of retaliation, her claim fails under *McDonnell Douglas*.  Establishment of a *prima facie* case raises a presumption of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  A defendant can overcome that presumption by introducing admissible evidence of non-discriminatory reasons for its actions. *St. Mary's*, 509 U.S. at 507 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). The defendant has only the burden of production, however; it need not prove that its stated reasons "actually motivated its behavior . . . ." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the defendant meets its burden, the plaintiff must then "show by a preponderance of the evidence that the employer's explanation [for its actions] is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.*  Plaintiff does not have to prove that an "illegitimate" motive was the sole reason for the employer's decision; she need only prove that it was a determinative factor in her termination. *Fuentes v. Perskie*, 32 F.3d at 764 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the plaintiff must present sufficient evidence to allow a factfinder to conclude that the employer's non-discriminatory reason was a *post hoc* fabrication, or pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998).

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes v. Perskie*, 32 F.3d at 765 (internal citations omitted).

CCI has established a non-discriminatory reason for terminating Lupyan. The student enrollment in CCI's Applied Service Management program had declined, the number of classes had been reduced from three (3) to two (2), and the Department staff reduced from five (5) to four (4). Lupyan, however, has failed to direct this Court to any evidence from which a factfinder could reasonably: (1) disbelieve CCI's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of her termination[5]. The Court is unable to find any evidence in the record that supports an inference that CCI held any animus toward Lupyan specifically because she availed herself of FMLA leave. Lupyan's retaliation claim under the FMLA, therefore, fails.

C.   Claims Under the ADA

The ADA makes it unlawful, *inter alia*, for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

---

[5]   Because the Court finds no evidence that a discriminatory animus was a motivating or determinative cause of her termination, Lupyan will be unable to meet the burden shifting standards of *McDonnell Douglas* required to prove her ADA, Title VII and ADEA claims.

compensation, job training, and other terms, conditions, and privileges of employment." 42

U.S.C. § 12112(a).  The plaintiff has the initial burden in an ADA matter of establishing a *prima*

*facie* case. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996); *Newman v.*

*GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995).  In order to establish a *prima facie* case

of discrimination under the ADA[6], plaintiff must demonstrate that: (1) she is a "qualified

individual with a disability" under the ADA; (2) she is otherwise qualified to perform the

essential functions of the job, with or without reasonable accommodations by the employer; and

(3) she has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent*

*Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)(citing *Shiring v. Runyon*, 90 F.3d 827, 831

(3d Cir. 1996)).

The ADA defines disability as "(a) a physical or mental impairment that substantially

limits one or more major life activities; (2) a record of such impairment; or (c) being regarded as

having such an impairment." 42 U.S.C. § 12102(2).  There is no evidence in the record that

Lupyan is disabled as defined under the Act. Nor is there any evidence that CCI regarded her as

disabled.

Under the ADA, a person is regarded as impaired when she: "(1) [h]as a physical or

mental impairment that does not substantially limit major life activities but is treated by a

covered entity as constituting such limitation; (2) [h]as  a physical or mental impairment that

substantially limits major life activities only as a result of the attitudes of others toward such

impairment; or (3) [h]as none of the impairments defined in paragraph (h)(1) or (2) of this

---

[6]     The elements for a *prima facie* case of disability discrimination under the ADA are
essentially identical to those necessary to establish a *prima facie* case under the PHRA. *See Kelly
v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Therefore, the Court's discussion regarding the
ADA claim applies equally to Plaintiff's PHRA claim.

section but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l). Because Plaintiff agrees that she has no impairment as defined by 29 C.F.R. § 1630.2(h), in order to succeed on her claim that she is "regarded as" disabled, she must show that SPI treated her "as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l)(3).

The analysis must focus not on Lupyan and her actual abilities, "but rather on the reactions and perceptions of the persons interacting or working with her." *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996). Therefore, Lupyan must demonstrate either: (1) that despite having no impairment at all, CCI erroneously believed that she had an impairment that substantially limited one or more major life activities; or (2) that she had a non-limiting impairment that CCI mistakenly believed substantially limited one or more major life activities. *See Eshelman v. Agere Sys.,* 554 F.3d 426, 434 (3d Cir. Pa. 2009)(citations omitted). Again, Lupyan has failed to direct this Court of any evidence that CCI regarded her as disabled. Summary judgment will be entered in favor of Defendants on Lupyan's ADA claim.

As set forth above, even if Lupyan is able to establish a *prima facie* case under Title VII or the ADEA, she is unable to meet the burden shifting standards of *McDonnell Douglas*. Those claims, including claims under the PHRA must also be dismissed.

D.     Hostile Work Environment

Hostile work environment harassment occurs when unwelcome discriminatory conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. *Meritor Savs. Bank FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)(3). In order to establish that she was subjected to a hostile work environment in violation of either the ADA, Title VII or the ADEA, Lupyan must establish: (1) that she suffered intentional discrimination because of her sex, age or disability (2) that the

discrimination was severe or pervasive, (3) that the discrimination detrimentally affected her; (4) that the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) that a basis for employer liability is present. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Aside from Lupyan's failure to raise this claim in her Charge of Discrimination filed with the Equal Employment Commission, which is fatal to her claim here, the Court finds that Lupyan cannot satisfy either the first or second element necessary to show hostile work environment. The hostile work environment claim fails as a matter of law.


**V.    CONCLUSION**

Based upon the foregoing, Lupyan's motion for summary judgment shall be denied and Defendants' motion for summary judgment shall be granted. An appropriate order follows.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge

cc:    Susan N. Williams, Esquire
       Jeffrey B. Balicki, Esquire

       (*Via CM/ECF Electronic Mail*)